UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW T. SZURA & COMPANY,
INC., d/b/a/ SZURA INSURANCE
SERVICES,

    Plaintiff,

vs.                                                      Case No. 12-11593

GENERAL INSURANCE COMPANY,              HON. AVERN COHN
OF AMERICA,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 14) AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 18)**

**I. Introduction**

This is an insurance duty-to-defend case. Plaintiff Matthew T. Szura Company, Inc. (Szura) is an independent Michigan insurance agency that provides services to clients in the Metropolitan-Detroit area. Szura is suing defendant General Insurance Company of America (General Insurance) for: count I- declaratory relief, count II- breach of contract, and count III- bad faith.[1]

Szura held a professionals errors and omissions liability insurance policy issued by General Insurance. Szura says that the policy required General Insurance to defend Szura in a lawsuit filed by a third party against Szura, but General Insurance failed to do so. As

---

[1] Szura also sued Liberty Mutual Group, Inc. (Liberty Mutual). The parties voluntarily dismissed Liberty Mutual without prejudice (Doc. 16).

a result, Szura says it incurred substantial costs.[2]

Now before the Court is Szura's motion for partial summary judgment on counts I and II (Doc. 14) and General Insurance's motion for summary judgment (Doc. 18). For the reasons that follow, Szura's motion will be denied and General Insurance's motion will be granted.

## II. Background

### A. The Policy

General Insurance issued a Insurance Professionals Errors and Omissions policy, no. LP709884f (the "Policy"), to Szura. The Policy was effective from June 1, 2008 until June 1, 2009. Of the Policy's seven sections, three are at issue in this case. Section I of the Policy, the insuring agreements section, contained the following relevant provisions:

> A. COVERAGE PROVISION
> We will pay on behalf of the Insured damages that the Insured becomes legally obligated to pay because of claims made against the Insured for wrongful acts arising out of the performance of professional services for others.
>
> . . .
>
> C. DEFENSE PROVISION
> We have the right and the duty to defend the Insured against any covered claim, even if such claim is groundless, false or fraudulent. We have the exclusive right to appoint counsel to defend the Insured. . . .

Section II of the Policy contained exclusions from coverage. The relevant exclusion at issue in this case states:

---

[2] Szura's motion does not address damages; counts I and II of the complaint ask for "the total defense costs incurred by Szura Services in connection with the Underlying Complaint of at least $173,564.53 plus costs and pre- and post- judgment interest."

2

This policy does not apply to any claim:

A. arising out of any dishonest, fraudulent, criminal, or malicious act, error, or omission of acts of a knowingly wrongful nature committed by or at the direction of any Insured. We will defend the insured against such claim unless or until the dishonest, fraudulent, criminal, malicious or knowingly wrongful act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. We do not have the duty to defend the Insured in a criminal proceeding. This exclusion does not apply to any insured who did not commit, participate in, acquiesce to or remain passive after having learned of the dishonest, fraudulent, criminal, malicious act, error, or omission or knowingly wrongful act[.]

Section IV of the Policy, the definitions section, set forth the following relevant definitions:

D. "Claim" means a demand for money or professional services received by the Insured for damages, including but not limited to the service of a lawsuit or the institution of arbitration proceedings or other alternative dispute resolution proceedings, alleging a wrongful act arising out of the performance of professional services.

. . .

M. "Professional Services" means services performed for others in the Insured's capacity as an insurance agent, insurance broker, insurance general agent, insurance managing general agent, surplus lines insurance broker, insurance consultant, insurance based risk management consultant or advisor, employee insurance benefit counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance expert witness, insurance premium financier, notary public, instructor of insurance subject, or board member of a nonprofit insurance professional association.

. . .

Q. "Wrongful Act" means any actual or alleged negligent act, error or omission, Personal Injury, or Advertising Injury.

3

### B. The Underlying Litigation

In 2009, Szura hired Douglas Charon to provide insurance services to Szura's customers. Mayfair Insurance Agency, Inc. (Mayfair) claimed the relationship between Szura and Charon was improper because Charon had been Mayfair's agent. Mayfair sued Szura and Charon in Oakland County Circuit Court claiming, in part, that Szura tortiously interfered with Mayfair's contracts and business expectancies, and conspired with Charon, to interfere with and breach Charon's fiduciary duties (the "underlying lawsuit").

Szura provided General Insurance with a copy of the complaint and submitted a claim to have General Insurance defend the case. General Insurance declined to defend Szura, asserting that its duty to defend was excluded by the exclusionary provision in the Policy. Szura was therefore forced to retain its own legal counsel. The case was sent to binding arbitration; the arbitrator determined that Szura was not liable for any claims. Szura spent $173,564.53 defending the case.

### C. This Case

The dispute centers on the interpretation of the Policy and its application to the underlying lawsuit. Under the terms of the Policy, General Insurance's duty to defend Szura was triggered only if the underlying lawsuit alleged facts that established a *covered claim*. A covered claim is a claim against Szura alleging a *wrongful act* that arose out of Szura's *professional services*. Szura focuses on the wrongful act prong, and asserts that intentional acts are encompassed in the definition of wrongful act, but spends little time explaining how the alleged acts arose out of "professional services." General Insurance says that, regardless of whether wrongful act includes intentional acts, the claims in the underlying lawsuit did not arise out of professional services as defined by the Policy. As

4

will be explained, the Court agrees with General Insurance. Whether "wrongful act" under the Policy includes intentional acts is immaterial because the underlying lawsuit did not allege acts that arose out of professional services.

### III.  Standard of Review

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial. Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### IV. Law and Discussion

### A.

An errors and omissions policy is "designed to insure members of a particular professional group from liability arising out of special risks such as negligence, omissions, mistakes and errors inherent in the practice of their profession." 9 Couch on Insurance 3d,

§ 131:38, p. 131-49. Errors and omissions policies are not substitutes for general liability insurance. Id. (citations omitted).

An insurer's duty to defend in an insurance policy is distinct and broader than its duty to indemnify. Grand Trunk W. R.R., Inc. v. Auto Warehousing Co., 262 Mich. App. 355, 353 (2004); Frankenmuth Mut. Ins. Co. v. Piccard, 440 Mich. 539, 546 (1992). The duty to defend is governed by the terms of the insurance policy. Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co., 450 Mich. 429 (1995). Further, the duty to defend arises so long as the allegations in the underlying lawsuit even arguably set forth a claim that would be covered under the policy. Protective Nat. Ins. Co. of Omaha v, City of Woodhaven, 438 Mich, 154, 159 (1991); Detroit Edison Co. V. Mich. Mut. Ins. Co., 102 Mich. App. 136, 142 (1980).

Michigan courts interpret insurance contracts "in accordance with Michigan's well-established principles of contract construction." Henderson v. State Farm Fire and Cas. Co., 460 Mich. 348, 353 (1999) (citing Arco Indus. Corp. v. Am. Motorists Ins. Co., 448 Mich. 395, 402 (1995)).[3] This requires insurance contracts to be enforced according to their terms, and courts should not create an ambiguity when the policy is clear and precise. Id. at 354 (citations omitted). "A court must not hold an insurance company liable for a risk that it did not assume." Id. (citing Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 567 (1992)).

The court of appeals succinctly articulated the requirements for interpreting insurance contracts:

> In determining whether an insurance policy applies, [courts] must first determine whether the policy is clear and

---

[3] The parties agree that Michigan law governs the case.

unambiguous on its face. In doing so, the insurance contract should be read and interpreted as a whole. Fragner v. Am. Comm. Mut. Ins. Co., 199 Mich. App. 537, 540 (1993). Exclusions are to be read with the insuring agreement and independent of other exclusions. Id. Exclusionary clauses are to be strictly construed against the insurer. Id.; Farm Bureau Mut. Ins. Co. Of Mich. v. Stark, 437 Mich. 175, 181 (1991).

    An insurance contract is clear if it fairly admits of but one interpretation. Id.; Fragner, *supra*. If an insurance contract's language is clear, its construction is a question of law for the court. Id. An insurance contract is ambiguous if, after reading the entire contract, its language reasonably can be understood in differing ways. Id. Furthermore, ambiguities in an insurance policy drafted by an insurer are to be construed against the insurer and in favor of the insured. Id.

Taylor v. Blue Cross/Blue Shield of Mich., 205 Mich. App. 644, 649 (1994).

**B.**

The Policy defines professional services as insurance services *performed for others*. In other words, the Policy covered errors and omissions in connection with providing insurance services to Szura's customers, if one of those customers brought suit against Szura based on the insurance services it received. By restricting professional services to services *performed for others*, the Policy limits General Insurance's duty to defend to only those claims brought by the object of the services provided by Szura. Here, Mayfair does not fall in the category of *others* as intended by the Policy. Mayfair did not sue in relation to any insurance services it received from Szura. The underlying lawsuit claimed that Szura hired Charon, and that Charon sold insurance products on Szura's behalf, even though Charon owed certain duties to Mayfair. This is outside the scope of professional services as defined by the Policy.

As explained in Couch on Insurance, in the context of insurance brokers and agents errors and omissions policies,

> the types of errors and omissions covered by such policies include–
>
> Failure to procure an insurance policy for a client.
>
> Failure to procure the amount of insurance requested by the client.
>
> Failure to deliver to the insurance company an endorsement restricting coverage, thus rendering the insurer liable for additional risks.
>
> Failure to cancel a fire policy when requested to do so by the insurer.

9 Couch on Insurance 3d, § 131:47, pp. 131-56 - 57 (citations omitted). The claims alleged against Szura are claims related to running its business, not claims arising out of professional services.

> Claims derived from the business aspects of running an insurance agency are not generally considered to be professional services and are not generally covered by errors and omissions insurance. Accordingly, claims for unfair competition and usurpation of trade secrets, or breach of an employment contract do not fall within the coverage provided by an insurance agent or broker's professional liability policy.

Id. at 131:48, p. 131-58 (citations omitted). As such, the underlying complaint did not allege a wrongful act *arising out of professional services for others*.

Courts have uniformly held that claims of tortioius interference with prospective business or business relations are not covered by an errors and omissions policy. See Emp'r Reinsurance Corp. v. Mut. Med. Plans, 504 N.W.2d 885 (Iowa 1993) (holding that underlying complaint alleged deliberate, rather than negligent, acts not covered by agent's

errors and omissions policy); Emp'r Reinsurance Corp. v. Martin, Gordon, & Jones, Inc., 767 F. Supp. 1355 (S.D. Miss. 1991) (same); DeShong v. Mid-States Adjustment, Inc., 876 S.W.2d 5 (Mo. Ct. App. 1994) (same); United States Fidelity & Guar. Co. v. Fireman's Fund Ins. Co., 896 F.2d 200 (6th Cir. 1990) (same). Although these cases arose in the context of whether "wrongful act" includes intentional acts, they are equally persuasive in determining that "professional services" do not include intentional and tortious interference with contracts and business relationships.

Accordingly, under the express terms of the Policy, General Insurance did not have a duty to defend Szura in the underlying lawsuit. To hold otherwise would open General Insurance up to a liability that was not bought and paid for by Szura.

### V. Conclusion

For the reasons above, plaintiff's motion for summary judgment on counts I and II is DENIED. Defendant's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.


Dated: October 26, 2012            S/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 26, 2012, by electronic and/or ordinary mail.

                                   S/Julie Owens
                                   Case Manager, (313) 234-5160